DAVIS, Circuit Judge,
concurring:
I concur fully in the panel opinion and in the disposition of this appeal. I write separately to express some lingering reservations regarding our vacatur of the district court’s summary judgment on the Baylor claim.
In West Virginia, as elsewhere, a plaintiff must prove fraud by clear and convincing evidence. See, e.g., Bowling v. Ansted Chrysler-Plymouth-Dodge, Inc., 188 W.Va. 468, 425 S.E.2d 144, 148 (1992); White v. National Steel Corp., 938 F.2d 474, 490 (4th Cir.1991). While the uncertainty surrounding the unidentified handwriting on Baylor’s Asbestos Questionnaire may present a factual issue, I have grave doubt that any reasonable resolution of that uncertainty is sufficient on this record to show fraud on the part of the lawyer defendants in light of the heightened burden of proof West Virginia law imposes on plaintiffs. It is far from obvious that a reasonable jury could find, by clear and convincing evidence, that the lawyer defendants committed fraud in “representing” that Baylor had been exposed to asbestos.
CSX argues that a fabricated Questionnaire is “compelling evidence” that Baylor’s exposure history was falsified and, thus, evidence that the lawyer defendants knowingly misrepresented this fact in support of his claim when they filed suit on Baylor’s behalf against CSX. The record shows that the Questionnaire was not completed until 2005, two years after Baylor’s initial screening. J.A. 92-95, 1154, 1157. The Questionnaire alone, created after the lawyer defendants had opened a file for Baylor on the basis of his work and medi *737 cal history, seems insufficient to show by clear and convincing evidence that the individual lawyer defendants knowingly filed Baylor’s claim on the basis of a factual allegation they knew to be false. This is all the more so given the evidence in the record supporting Baylor’s exposure history. According to evidence in the record, brake exposures to track men (Baylor’s position) were “certainly a possible source of exposure.” J.A. 1195. As this court has previously noted, “[f]raud ‘is not deducible from facts and circumstances which would be equally consistent with honest intentions.’ ” White, 938 F.2d at 491 (citing Steele v. Steele, 295 F.Supp. 1266, 1269 (S.D.W.Va.1969)).
Furthermore, even if one assumes that CSX has projected evidence sufficient to establish, by clear and convincing evidence, a material misrepresentation, it is highly doubtful that CSX can show its reasonable reliance on any such misrepresentation. CSX claims that there “can be no question that ... CSX[ ] relied on that misrepresentation by treating the claim like every other one in the mass asbestos docket.” Appellant’s Br. at 48. However, a successful fraud action requires that a plaintiff not only have “relied upon the misrepresentation,” but to have been “justified in relying upon it.” Martin v. ERA Goodfellow Agency, Inc., 188 W.Va. 140, 423 S.E.2d 379, 381 (1992) (emphasis added). Here, Baylor’s underlying damages claim was based on allegations in a civil lawsuit against CSX. As the defendant in that suit, CSX had the ability, and its lawyers had a duty, to access, examine, and where appropriate, contest the other side’s evidence, including, as here, evidence with respect to the sufficiency of Baylor’s asbestosis claim. Instead, CSX’s claim here, that it was damaged by its (ostensibly reasonable) reliance on a misrepresentation regarding Baylor’s workplace exposure, appears to turn on its head the very adversarial regime that is one of the hallmarks of our system of civil justice. One is left to ponder how a party represented by capable counsel might reasonably rely on the allegations made on behalf of its adversary.
I note, as well, that to the extent CSX rests its claim for fraud on the lawyer defendants’ alleged “misrepresentation” of their “good-faith basis” for filing the Baylor claim, this court received no coherent answer at oral argument to its question seeking the source of any such duty under West Virginia law. CSX appears to rely for this proposition on West Virginia Rule of Civil Procedure 11(a). Appellant’s Br. 39. However, West Virginia courts have noted that “[t]he purpose of Rule 11 and Rule 37 of the West Virginia Rules of Civil Procedure is to allow trial courts to sanction parties who do not meet minimum standards of conduct in a variety of circumstances.” Davis ex rel. Davis v. Wallace, 211 W.Va. 264, 565 S.E.2d 386, 389 (2002) (citing Bartles v. Hinkle, 196 W.Va. 381, 472 S.E.2d 827, 835 (1996)). Accordingly, CSX’s claims for fraud on the basis of this rule appear plainly unfounded. As has long been true of the corresponding federal rule, a private cause of action may not be based on this rule of procedure. See, e.g., Port Drum Co. v. Umphrey, 852 F.2d 148, 148-49 (5th Cir.1988) (“Under [plaintiffs] unique and imaginative theory, injured third parties derive from Rule 11 a private cause of action to enforce an attorney’s professional duties.... [W]e reject this novel legal argument.”). As we have analogously observed, “[c]ourts have consistently refused to use ethical codes to define standards of civil liability for lawyers.” Schatz v. Rosenberg, 943 F.2d 485, 492 (4th Cir.1991), cert. denied sub nom. Schatz v. Weinberg and Green, 503 U.S. 936, 112 S.Ct. 1475, 117 L.Ed.2d 619 (1992).
*738 Notwithstanding my lingering misgivings, for the reasons described in the panel opinion, I am content to remand the Baylor claim to the district court so that the above issues might have a proper airing.